Thank you very much your honor and I may please the court. I'm Nicholas Carlin of Phillips Early Wine Given in Carlin in San Francisco for the plaintiff and appellant Anthony Gantner. I'd like to reserve three minutes for rebuttal please. Sure. Mr. Gantner brought this class-action lawsuit against PG&E in the wake of the massive power outages in 2019. He contends that the reason PG&E cut the power and what they call public safety power shutoffs or PSPS's was because the maintenance of its power lines was so negligent that it was forced to cut the power to avoid sparking more wildfires. We've alleged in our complaint and as Judge Alsop in his supervision of PG&E's criminal probation has repeatedly emphasized these PSPS's were necessitated by this failure to properly trim trees close to power lines and failure to replace old decrepit equipment. We do not take issue here with the decision to implement these outages or the manner in which PG&E did them and we do not say that all PSPS's are actionable. Only those that were made necessary by PG&E's Now this case in no way interferes with the CPUC's regulation of PG&E. To the contrary it is an aid of rather than a derogation of those regulations by encouraging PG&E to comply with its obligations as set forth in the Public argues essentially two arguments in support of its preemption argument. First it's sort of this generalized notion that just because they regulate PSPS's that anything touching upon them must be preempted and that's completely wrong contrary to all the case law. This is not a type of preemption like field preemption for example if you're looking at state versus federal law. It's a type of preemption where you actually have to show that the conduct alleged or that a judgment in the case would actually interfere in some way with PG&E's regulation of the utility and PG&E simply has not shown that here. There is the CPUC filed an amicus brief saying that if we allowed courts to impose liability on PG&E the way you'd like that it would hinder its ability to regulate power shutoffs. So what do you think we should do in terms of deference to that amicus brief? How can we reconcile that amicus brief with your argument? Well glad you asked that question Judge Friedland. There is no deference. They are entitled to no deference here. There's no basis for any special deference given to an amicus brief from from PUC and in fact numerous courts have in very similar situations have ignored the PUC amicus briefs in particular the Wilson case and the Mata case. In both cases of both of those cases PUC just like here submitted an amicus brief saying oh just in general that this oh this is going to interfere or hinder our regulation but with no specifics and same same here there are no specifics given. There is no beef. Where's the beef? And incidentally the former executive director of the PUC Alice Stebbins who was the director during the period of these these blackouts has submitted an amicus brief herself completely to the contrary of the PUC where she contends that and agrees with us that this case would in no way interfere with PUC's regulation of PG&E. In fact it would aid and the regulations that are the laws that PG&E is violated here are essentially contained in public utilities code 451 which says you have to maintain a safe grid. That's what we're saying they did wrong. They were negligent because they didn't maintain a safe grid. Counselor let me put let me put this question or this issue to you. It seems to me that frequently a regulatory body with this type of jurisdiction has to make decisions even if implicitly about what they're going to try to put the hammer down on. This is not like you know water where you want 2.3 units of something instead of 2.4. You've got all kinds of how to rectify that how to bring them into line how to put the hammer down and so it seems to me and give me your view on it that when you say it's an aid of what they're doing it's an aid of one view of it and their view may not have been the same. So aren't we sort of transferring regulation from the PUC to random plaintiffs? No what I mean by saying is that this lawsuit actually aids in in enforcing PG&E's duty to maintain a safe power grid. It's as simple as that. It's as simple as that. They were woefully criminally negligent in failing to maintain that safe power grid and by holding them responsible for for that misconduct we can only be aiding in in their regulation because that's what they're required to do. Now keep in mind that PG&E bears the burden of proof here. This is an affirmative defense of preemption and to just sort of wave their hands and say well you know we PG&E or even PUC to say well this is somehow hindering us but that without saying why they're not meeting their burden of proof. They have to actually show some specifics as to how it would actually actually interfere and if we look at the cases that have come down in this area there's really only three cases where where the courts have held that there was preemption. All the other cases found there wasn't because just like in this case in the Monta case in the Hartwell case that was a split decision in the Wilson case and all those other cases where there's no preemptions the same situation is here where there's just sort of a generalized argument that because it touches upon an area we regulate or an area PUC regulates that is preempted. The only cases where it was actually preempted were the Covalt case where the complaint was that these EMFs these electromagnetic fields from the high voltage wires were causing damage to the plaintiffs and but these these levels have been approved by the PUC so obviously that specifically would be contrary to a PUC directive. In the Cooney case which was a district case by an improper plaintiff who claimed that radio waves from a smart meter caused her to go live in some radio-free zone in West Virginia well you know the court held yeah well the smart meters were approved by PUC those levels were approved by PUC if we were to hold it they're dangerous then we're violating some specific finding in the PUC and same in the Sorale case which talked about the minimum distance for cutting cutting walnut trees the court found that the specific regulation allowing the utility to cut more than that 10 foot minimum for safety purposes would have been violated if they held that it was improper. So you know all those cases you have very specific regulations of the PUC that were violated that would have been contradicted by the court ruling in favor of the plaintiff. Here we don't have that at all there's not even a contention of that. The only thing that they've raised only specific that they've raised is this notion of well because of the quote-unquote massive liability that would be a disincentive for PG&E to engage in these public safety power shutoffs and frankly that is a highly cynical argument for them to make to suggest essentially what they are suggesting is that if they have to pay damages for the harm they caused to customers in implementing a PSPS then they won't do it. They'd rather risk causing wildfires than have to pay for some spoiled groceries for their customers. Counsel much of the argument today has been almost a policy argument what kind of makes sense and weighing the various positive and negatives and you think about the idea of us seeking help from the California Supreme Court because this is to be a big question for the state why not get their help on this one? Well Judge Owens I happened to have attended your seminar on this subject the other day and and we have we did we have suggested that in our papers. I don't think you have to go there I think it's so clear here that they have not met their burden of proof on preemption that there's really no need to go back to the California Supreme Court but obviously if if your honors find that it's it's it's not something that you want to tackle here and you'd rather submit it to the California Supreme Court obviously that's something that you know we've suggested as a this is only in federal court because of the bankruptcy proceedings there's no no this is really all a matter of state law. Am I right about that? Yes that's true Judge Boggs that's the only reason we're here and in the Ninth Circuit is because we had to file this as an adversary proceeding in the in the bankruptcy court. If I could address the this this again this argument of the liability that would somehow that somehow would justify this preemption the argument that the liability to the customers is something that PG&E can take into account. The fact is there that's wrong for four reasons. First if the CPUC's regulations say that the only factors the utility is supposed to take into account in deciding whether or not to conduct a shutdown is you weigh the risk of a wildfire against the potential cost or harm to the customers. They're not allowed to take into account the cost to themselves. There's not once one suggestion anywhere in any of the PUC records or documents anywhere that that is the consideration that they can take and they shouldn't because the only issue is safety here. The only issue is protecting the public from wildfires if it gets to that point. It should not be based on what PG&E's potential bottom line might be and in even making that argument they're violating section 1759 because what they're doing is trying to add the change essentially the PUC standards and and that would be a violation of section 1759. Also that argument does not relate to CPUC regulation at all doesn't say anything about CPUC's regulation it only talks about PG&E's internal decision-making. It's totally illogical anyway because why would they really risk causing wildfires where they've had to pay billions in fact 13 billion in the last round in order to avoid having to to pay customers for loss of the cost of their spoiled groceries or whatever from a power outage. Counselor did you want to reserve some time for rebuttal? Yes I had reserved four minutes because I know this is this so okay clock was 15 you've kind of burned through that so why don't we do this I'll give you I'll give you two minutes for rebuttal and why don't we hear from opposing counsel now. Thank you. May it please the court Omid Nassab for PG&E. Your honors the issue raised by this appeal is whether a California utility can be subjected to civil liability for engaging in a public safety measure that has been expressly authorized by its regulator the CPUC. The public is not really liability for the public the PSPS right it's liability for not maintaining the grid. No your honor the the damages that the plaintiff seeks is directly for the authorized conduct in the sense that the damages that he seeks are you know spoiled food in the refrigerator, inability to harvest wine grapes, the the cost of running a generator, all of that liability is stemming out exactly from the shutoffs and that is the the conduct that the CPUC has authorized. So yes the plaintiff tries to say that the the negligence is from from the condition of the grid but the the the conduct that that the damages are all from the shutoffs themselves. And so say that PG&E's duties were divided in between two companies so you have one company that was maintaining the grid and another company that was like running the grid so the PSPS's are the company running the grid has to shut them down but a different company has maintained the grid. Is there any reason under your theory why you couldn't sue the company that had maintained the grid and get damages for the PC the damage caused by shutting it off but for the company that didn't maintain the grid? And that's in that hypothetical your honor the the entity managing the grid would be also regulated by the CPUC? Well presumably because they're a power company but they would have nothing to do with the other company. Your honor honestly I would have to think about that that question what what I what I what I know is that here it is the same company and and these public safety shutoffs are conducted by all utilities in the state not just PG&E. In fact state law mandates that all utilities in the state have protocols for de-energizing their grids that's not just PG&E that's every utility in the state and that regulatory program is something that the CPUC has been engaged in a process for over a decade to get exactly at what Mr. Carlin referenced which is to strike the right balance between keeping the power on and shutting it off for safety. What the plaintiff is proposing to do here is to put on one side of that scale massive potential civil liability including what he seeks in this case is two and a half billion dollars of damages just for the shutoffs in 2019. They seek punitive damages to punish PG&E as a result of the shutoffs and they also seek to impose the the burden and expense of dealing with hundreds of thousands of disparate claims right the the theory of liability alleged here is is quite broad. Mr. Carlin said it does not. So they may or may not succeed in that but but say say that you win what prevents PG&E from just continuing to not maintain the grid and having the cost be borne by all these customers who lose their food a week every month for every summer of the rest of time. Well your honor the CPUC is very actively engaged in ensuring that shutoffs are a are a are done only when necessary and to the extent that a utility over time is over using the shutoffs. Well they may not be over using the shutoffs because if they don't maintain the grid maybe the shutoffs are totally necessary all the time. Well your honor part of what the the CPUC manages is the wildfire mitigation process that the utilities all utilities across the state have to engage in every year. As part of that process that includes the holistic view of the wildfire mitigation programs including steps that the utilities need to take to over time narrow and reduce the number of PSPS events. So I don't think there would be a situation I mean there's obviously liability right if somebody if something happens where there's a problem with the grid and the damage is caused by the negligence itself a pole is not maintained and it falls and hits somebody or God forbid starts a fire. There of course is potential liability and a huge incentive for PG&E to address those problems. Part of the reason PG&E spends four billion dollars a year on on wildfire mitigation efforts across the board. But they could either fix the pole or they could shut off the power around the pole and so if they don't have to pay anything for shutting off the power around the pole why don't they just keep shutting off the power around the pole and never fix the pole? Well your honor I think the the CPUC if that kind of conduct were to occur has broad authority to to make sure that it does not right. There is constant review of why shutoffs are being done and whether or not they are appropriate. And and if that kind of situation is ongoing then I believe that the the CPUC would would address that. Number one I also think it's it's not it's not authorized I don't think the CPUC authorizes the utility to ignore the condition of its grid and de-energize repeatedly to avoid spending the money to to fix a grid right. I think you would have a situation there where if that if that hypothetical were true that that would not be in compliance with the CPUC's authorization. Well why not I mean in any given case if there might be a wildfire it's better to shut off the power than have the wildfire right. So in any if that's the only consideration what would prevent it from just saying okay this is another time we have to shut off. Under I believe the CPUC guidelines the utilities have a duty to mitigate to to reduce the use of PSPS over time not just for maintenance right but but to add for example sectionalizers to the grid to make them more narrow to underground lines to harden lines in particular places where they would have an impact on reducing the amount of PSPS. I think if if you know that a wildfire is going to happen I think the right answer is to to shut off the power. That said it's it's never I don't think that that black and white that that you know that it's more about judging the potential risks. But the critical fact that we have here right is that the plaintiff has conceded that the authorizations were consistent with the CPUC's authority right that that the CPUC had authorized these that the shutoffs were consistent with the guidelines. Now Mr. Mr. Carlin said earlier that what we were seeking to do is say any anything touching a PSPS is preempted. That's absolutely not the case. If there was a allegation for example that the CPUC's guidelines around PSPS were violated, somebody didn't get the appropriate notice, the power was not shut off when it was necessary and when it was a last resort as required by CPUC guidelines, then we would have a very different case. But what the plaintiff in this case has said from the beginning is that they are not challenging the compliance with the CPUC guidelines. As Mr. Carlin told way back to the bankruptcy court told Judge Montali PG&E had the authority to do the shutdowns. We are not contesting that. I just don't understand unless you can point to what in the PSPS regulations says if it's caused by negligence of the grid it's violating the regulations or something. I just once there is negligence in maintaining the grid and a fire might start there's reason to do the PSPS again and we've already talked about this. So the fact that it was appropriate to turn off the power to mitigate the risk doesn't tell us that there wasn't a problem earlier about maintaining the grid and causing that problem. Well your honor number one I clear that PSPS are meant to be in a measure of last resort. I think if you are engaging in shutoffs year after year because you're not doing something to maintain your grid that that would not be in violent that would not be in compliance with the CPUC guidelines. All right right if you're just sort of year after year because I don't believe. I mean we have had shutoffs year after year at this point. We're a few years in and there's shutoffs in some areas every summer. That's true your honor they have reduced every year in terms of the people affected and they have reduced quite significantly. So the scope of the shutoffs has gone down every single year from 2019 until the present and the CPUC is very focused on additional steps and investments that can be made over time to do that. So I think that is a matter of fact. Now again this is not I come back to it because this is not a case where the plaintiff is alleging that those guidelines were violated. So what he is seeking to do is impose liability for conduct that the CPUC has authorized. I think that Covalt and Hartwell teach that that that's not permissible and I and I also believe that it's that it's also the case that under California law it's not enough to make out a claim under 2106 the law that Mr. Carlin cited because section 1759 as the Covalt case clearly held has primacy and limits the cause of action in 2106 and I just you know it is remains the case that the CPUC and again at the end of the day this was done through a process of decades a decade plus of work with wide input from all stakeholders in California and this is an active program and in the wisdom of that regulator these these shutoffs have been authorized and the question I think as a legal matter under California law is are we did we act within that authorization or did we violate as the Hartwell case said if you're within the authorization that's not challengeable if you allege that the authorizations were violated that the shutoff was not of the last resort that it wasn't necessary then those lawsuits may proceed that was the that was the holding of the Hartwell case in this case mr. Carlin doesn't dispute that the guidelines were met and I and I think it's it is this this notion that seeking two and a half billion dollars seeking punitive damages and hundreds of thousands of disparate claims which have their own burden that that does not interfere with the CPUC's attempted balancing that that does not make make sense to me and I think that's precisely the reason the CPUC has weighed in in this case and that that brief is notable because contrary to the arguments here mr. Carlin's arguments earlier the carry case the Ninth Circuit this court said that it finds the CPUC statements regarding its jurisdictional interests to be quote very persuasive precisely on this issue of whether a regulation excuse me a civil action would interfere with the CPUC's ongoing authority it did that for a couple reasons number one because the California Supreme Court has looked to the CPUC and also because I think as a matter of common sense who would know the jurisdiction of the CPUC better than that agency itself and the CPUC honed in precisely on the same points recognized by the district court and the bankruptcy court it is true though that courts have also sometimes ignored briefs from the CPUC or not given them deference right I mean it seems like the CPUC has filed briefs in cases saying this is a problem for us and courts have not agreed so it's not positive I agree that in the Court of Appeals case the Wilson case which did not deal with the third prong of the Cobalt test which is where this court said that the CPUC's views are very persuasive it was instead on the second question which is did the CPUC regulate the conduct at all in that case the Wilson court disagreed with the CPUC that its regulations were specific enough to the issue of stray voltage so that that is that is correct and of course this this court you know the CPUC cannot dictate to this court but I do think it is that the case that both the California Supreme Court and this court have recognized that the CPUC should that its views are are very persuasive to use the Kerry court's words on this issue and what is your view currently on whether we should certify to California Supreme Court your honor in my view if you know we sort of have the opposite the opposite view of Mr. Carlin we think the bankruptcy court the district court the CPUC they all aligned on the same principle that Cobalt and Hartwell they say that you can't impose civil liability on authorized conduct that's exactly what this case does and therefore it's a straight application obviously if this court does not feel that it is a clear question that is a option available to this court but it was not one that that you know we agree with the way the bankruptcy court the district court and the CPUC analyze this issue all right any other questions seeing no hands I thank you very much counsel for your argument thank you all here rebuttal from mr. Carlin oops you got a you got a mute yourself mr. Carlin so but I did it thank you so well as mr. Nassau said the in the Kerry case the court found the PUC's brief persuasive so it has to be persuasive they're not entitled to no special deference if they're persuasive on their own merits then you listen to and in the Kerry case you see just said well we we take no position on whether these taxi drivers are our independent contractors or employees so it's no wonder that they they went along with that the PG&E keeps talking about they keep it's really a red herring they keep saying we authorize the PSPS it's well first of all PUC doesn't authorize them they have guidelines PG&E is the entity that decides to call one but what was not authorized is to maintain their grid in a negligent manner that's really the crux of the issue as judge Friedland has pointed out it's that that is what was not authorized PG&E was not authorized to not cut its trees was not authorized to leave hundred-year-old equipment on the line that's what they were not authorized to do and that's really as in Hartwell when you when you have conduct it is authorized by the CPC there isn't going to be liability so in that case they said the the standards for the water the water supply they couldn't the plants couldn't attack the actual standards but if the utility had water to fill below that standard they could be liable so in that case the court held that you could have a cause of action for the for the bad water now just one last thing when you talk about authorization let's take an example of a person who's driving a car and has not maintained his brakes properly okay and he's licensed he's licensed by the state to drive that car and he drives his car the brakes fail he's heading towards a crosswalk full of pedestrians and at that point he has to make a choice do I steer over to the right side and damage some cars on the side of the road that's really the equivalent of what what we have here your honors the PG&E failed to maintain its brakes it was authorized to drive the car but it had to make the choice whether to plow into the into the people or damage the cars in either case it should be liable for the damage it causes it should be liable for causing the wildfires and they have been liable for causing the wildfires and if they decide they don't want to cause the wildfires and instead harm their customers they should pay for that too with that I will rest thank you very much more questions and that's everything else I want to thank both counsel for their argument in another interesting case thank you very much for that
judges: Boggs, OWENS, FRIEDLAND